IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 25 2014

JEFFREY P. COLWELL
CLERK

Case No. '14 - CV - 02651

Ramona Smith,

**Petitioner,**

vs.

Cheyenne Mountain School District 12, et al.

**Respondents.**

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

COMES NOW the Petitioner, Ms. Ramona Smith ("Parent"), who hereby brings this Verified Complaint for Injunctive Relief. This Complaint is brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400, et seq. This Complaint specifically alleges that the Respondent, Cheyenne Mountain School District 12 ("District 12"), violated IDEA's "stay put" clause, 20 U.S.C. 1415(j), when it unilaterally terminated all of the special education and related services that it was required to provide to "R.S.," as set forth in his Individualized Education Plan ("IEP"). The Petitioner therefore seeks relief, solely in her own capacity, directly under Section 1415(j), together with such additional and complimentary relief as may be available pursuant to F.R.C.P. 65.

Facts

1. Parent is the mother of R.S.

2. R.S. is a lanky boy who is fascinated with bugs and trucks. He also loves animals and watching any source of running water. But for most of his six years on this Earth, R.S. has been

known primarily as a boy who has almost no interest at all in other people. He was non-verbal. In his regular preschool in Falcon School District 49 ("District 49"), his interactions with people, even with other children, were unconventional - what some might euphemistically call stilted or awkward. This made him an easy target, for his more "normal" peers, who in their early grades picked on, bullied, and relentlessly tormented R.S.

3. This abuse caused R.S. to turn inward even further. Parent would check in on him, when time permitted, dropping by unexpectedly to observe how he was doing in school. R.S. would often be found sitting on the floor by himself in a corner of his "special education" room, playing intently with his fingers.

4. Desperate to shelter R.S. from his tormentors and provide him with even a basic education, R.S.'s parents used Colorado's "School Choice" law, C.R.S. 22-36-101, to enroll him in Cheyenne Mountain Charter Academy ("CMCA") for kindergarten for the 2013-2014 school year. R.S. had an older brother, "M.S.," who had already been enrolled in CMCA for a year by that time, and it was hoped that with his big brother's protective presence on the playground, that R.S. would not be picked on as mercilessly as he had been at his neighborhood school.

5. Shortly after R.S. arrived at CMCA, District 12 determined that the District 49 IEP developed for R.S. was inadequate. Specifically, District 12 determined that the District 49 IEP developed for R.S. did not sufficiently identify: (1) R.S.'s learning disabilities, (2) R.S.'s educational and behavioral needs, and (3) the services required to address his needs.

6. The District 12 IEP Team therefore developed a new IEP for R.S. on November 7, 2013. This IEP was later revised by the District 12 IEP Team on May 1, 2014, which is the most current IEP. This IEP called for R.S.'s "School of Attendance" to be "Cheyenne Mountain Charter Academy," and for his services to be provided "in accordance with the Cheyenne Mountain Charter Academy school calendar." R.S.'s special education services at CMCA were to continue, pursuant to this IEP, through November 7, 2014. These services were to include, "100% paraprofessional support."

7. The change of schools, combined with his new IEP, was extremely challenging for R.S. R.S. struggles enormously with new environments, and this transition was especially stressful, for both R.S. and his parents. In his prior environment, R.S. was in a room with just four other children, and was generally left alone to do as he pleased, which usually meant sitting on the floor by himself, obsessing with his fingers. At CMCA, by contrast, R.S. was placed directly into the regular kindergarten class with 19 other children, with teachers that continually forced R.S. to socialize with his peers.

8. R.S. rebelled. He had emotional meltdowns in class, rolling on the floor, kicking and screaming. He would often bolt for the door in a mad rush to avoid the social and educational demands that were suddenly being thrust upon him. As mentioned, R.S. was assigned a paraprofessional, as part of his special education plan, to help him function in the classroom. Early attempts at implementing this paraprofessional support were dismal failures, and R.S.'s negative behaviors continued.

9. But as the weeks and months passed by, something remarkable gradually started to happen. R.S., for the first time, began to speak coherent words and short phrases. One day, out of the blue, he said, "I love you." He started to make friends and develop emotional connections with his CMCA therapists, teaches, and peers. The tantrums and escape behaviors all but disappeared. And for the first time ever, R.S. exuded unbridled joy at the prospect of attending school each day, waiting impatiently by the car each morning - even on the weekends - exclaiming, "I wanna go to school!"

10. On July 3, 2014, Smith received a letter from CMCA Executive Director Colin Mullaney, dated May 22, 2014, stating:

> I have reviewed [R.S.'s] Individualized Education Plan (IEP) and have determined that CMCA would need to hire additional staff in order to meet his IEP. As a result, Cheyenne Mountain School District 12 (CMCA) is denying [R.S.'s] enrollment at this time.

11. Mullaney's letter was particularly disturbing to Smith, because R.S. had made such critical emotional bonds with his CMCA therapists, teachers, and fellow students. Moreover, the prospect of R.S. being forced to return to the environment where he was picked on, bullied, tormented, and neglected, was unacceptable. Smith's concerns were underscored by the fact that, even by District 12's account, District 49 had failed to provide R.S. with an IEP that adequately addressed his needs.

12. On July 16, Smith filed a Due Process Complaint with the Colorado Department of Education ("Complaint"). The complaint was served on District 12 on July 18, 2014, which was the last day R.S. was enrolled at CMCA (in a summer school program tailored for his specific needs).

13. On July 28, 2014, Smith sent Mr. Ward Barr, CMCA's Principal, an email. This email was also sent to District 12's Director of Education, Ms. Karen Higgins, and to CMCA Executive Director Colin Mullaney. This email informed them of the Complaint that had been filed, and of the "stay put" provision contained at 20 U.S.C. 1415(j) and C.F.R. 300.518. In this email, Smith invited Mr. Barr to comply with the "stay put" requirement by confirming that R.S. would be permitted to attend his first grade orientation and attend his first grade classes.

14. Mr. Barr responded via email on July 30, 2014, saying the federal "stay put" provision was irrelevant, because federal law did not apply to the situation. Accordingly, he said, CMCA and District 12 were going to continue to prevent R.S. from attending his first grade classes at CMCA.

15. R.S. has since been unable to attend his CMCA first grade classes, which began on August 13, 2014. Smith has been forced to home school R.S. ever since, and R.S.'s social skills have deteriorated.

16. In the underlying Due Process proceedings, the Administrative Law Judge ("ALJ") erroneously refused to enforce the mandatory "stay put" provision of 20 U.S.C. 1415(j). The ALJ would also later erroneously dismiss all of Smith's due process claims. An appeal of the ALJ's decisions will be forthcoming, within the 90-day period provided for such an appeal. The ALJ has yet to provide the written order, which would start the 90 day timeframe, so it is expected that Smith's appeal of the ALJ's decision is approximately two to three months away.

17. The instant Complaint is not an appeal of any of the ALJ's decisions. Rather, this is an independent action, brought directly under 20 U.S.C. 1415(j), to ensure that District 12 provides R.S. with a free, appropriate education as required by law.

18. CMCA and District 12 have made it clear that R.S. is not welcome back at his school. Under no circumstances will they provide R.S. with the services called for in his IEP - not even with the mandatory "stay put" clause in effect.

WHEREFORE the Petitioner seeks a Temporary Restraining Order and Preliminary Injunction, allowing R.S. to immediately receive private school placement at District 12's expense, together with such support, related services, and assistive technology as may be proper to provide R.S. with an appropriate education, pursuant to IDEA Sections 1401 and 1415(j).

Alternatively, District 12 should be ordered to maintain R.S.'s educational placement at CMCA, including all special education services called for in his IEP.

Because District 12 has shown that it is unwilling to voluntarily comply with its legal mandate to provide R.S. with a free appropriate public education, Smith requests that payment for the private school placement and other services sought herein be made directly by the Colorado Department of Education, with all such amounts to be withheld from District 12's state equalization payment, in the manner described for financially recalcitrant school districts in Colorado's Exceptional Children Education Act ("E.C.E.A.") Rule 9.07(2)(a)(iv).

Respectfully submitted this 20th day of September 2014.

Ramona Smith
10436 Ross Lake Drive
Falcon, CO 80831
Tel: 303-834-5525
eMail: sequiturcredere@gmail.com

I hereby affirm that the statements contained herein are true and accurate to the best of my knowledge.

*[signature]*

Ramona Smith
10436 Ross Lake Drive
Falcon, CO 80831
Tel: 303-834-5525
eMail: sequiturcredere@gmail.com


Subscribed and sworn to before my by Ramona Smith, this 22nd day of September, 2014.

*[signature: Carie L Hartman]*
Notary Public

> CARIE L HARTMAN
> Notary Public
> State of Colorado
> Notary ID 20044033946
> My Commission Expires Oct 9, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2014, a copy of the foregoing Verified Complaint for Injunctive Relief was served on the following individuals first class prepaid mail to:

Cheyenne Mountain School District 12
1775 LaClede Street
Colorado Springs, CO 80905

Wm. Kelly Dude
Anderson, Dude, Lebel PC
111 South Tejon Street Ste 400
Colorado Springs, CO 80903

Colorado Department of Education
State Office Building, Room 500
201 East Colfax Avenue
Denver, CO 80203-1799

Ramona Smith
10436 Ross Lake Drive
Falcon, CO 80831
Tel: 303-834-5525
email: sequiturcredere@gmail.com

Certificate of Notice
(Local Rule 65.1)

COMES NOW the Petitioner, Ramona Smith and, pursuant to Local Rule 65.1, hereby certifies that notice of the filing of the Verified Complaint for Injunctive Relief together with copies of all pleadings and documents filed in this action to date and to be presented to the Court at the hearing, have been provided to the Respondents.

Respectfully submitted this 22nd day of September, 2014.

_____
Ramona Smith
10436 Ross Lake Drive
Falcon, CO 80831
Tel: 303-834-5525
email: sequiturcredere@gmail.com