IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02651-PAB-CBS

RAMONA SMITH,

    Plaintiff,

v.

CHEYENNE MOUNTAIN SCHOOL DISTRICT 12,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Motion to Reconsider and Vacate Order Issued October 17, 2014 [Docket No. 33] filed by defendant Cheyenne Mountain School District 12. Plaintiff Ramona Smith filed a brief in opposition [Docket No. 37] and defendant filed a reply [Docket No. 40] and supplemental authority [Docket No. 38].

**I. BACKGROUND**

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415. Plaintiff's son R.S. has Autism Spectrum Disorder. In 2013, plaintiff removed R.S. from enrollment in his school district of residence, the Falcon School District, and, pursuant to Colorado's school choice law, enrolled R.S. in kindergarten at the Cheyenne Mountain Charter Academy ("CMCA"), a school within the Cheyenne Mountain School District. Shortly after R.S.'s enrollment at CMCA, CMCA staff determined that the Individualized Education Program ("IEP") "developed while [R.S.] was in the Falcon School District . . . did not adequately identify the extent of his

learning disabilities." Pltf. Hrg. Ex. 1 at 1, ¶ 2.[1]  CMCA reevaluated R.S. and, on November 7, 2013, a new IEP was agreed upon. *Id.* at 1, ¶¶ 2-3. In May 2014, CMCA staff revised R.S.'s IEP (the "May 2014 IEP"). Pltf. Hrg. Ex. 2. The May 2014 IEP lists CMCA as R.S.'s "School of Attendance." *Id.* at 1. Shortly thereafter, CMCA informed plaintiff that it was denying R.S. enrollment for the upcoming school year. On July 16, 2014, plaintiff and her former husband filed a due process complaint with the Colorado Department of Education claiming that defendant committed procedural violations of the IDEA. Docket No. 33-1 at 28. There is no dispute that the May 2014 IEP was the existing IEP at the time the due process complaint was filed.

Plaintiff filed a motion for a preliminary injunction in the due process proceeding, seeking to enforce the IDEA's "stay-put" provision, 20 U.S.C. § 1415(j). *Id.* After holding a telephone hearing with plaintiff and defense counsel, the ALJ denied plaintiff's motion on August 8, 2014. *Id.* at 32. On September 23, 2014, the ALJ dismissed plaintiff's due process complaint on the merits. Docket No. 11-1 at 22.

On September 25, 2014, plaintiff filed a complaint [Docket No. 1] and motion for injunctive relief [Docket No. 5] seeking an order requiring defendant to fund private school placement for her son, R.S., or, in the alternative, to enroll R.S. at the Cheyenne Mountain Charter Academy ("CMCA") for the pendency of the administrative proceedings. Docket No. 5 at 1-2.

On October 15, 2014, the Court held a hearing on plaintiff's request for injunctive relief to enforce the stay-put provision. Docket No. 20. Both parties presented

---

[1] All citations to "Hrg. Ex." are to exhibits introduced by the parties at the October 15, 2014 preliminary injunction hearing.

testimony and tendered exhibits.² At the hearing, plaintiff argued that the stay-put provision required defendant to pay for R.S. to attend private school or, in the alternative, maintain R.S.'s enrollment at CMCA. Defendant took the position that CMCA was not required to enroll R.S. for the 2014-2015 school year because, among other things, the Falcon School District – R.S.'s district of residence – was capable of accommodating R.S.'s educational needs. The Court ruled that the ALJ did not determine R.S.'s then current educational placement as required by the stay-put provision, Docket No. 21 at 4, and that the ALJ erred by appearing to place the burden on plaintiff to establish that the Falcon School District could not meet R.S.'s educational needs. The Court also ruled that, for purposes of plaintiff's due process complaint challenging the May 2014 IEP, R.S.'s then current educational placement was CMCA. *Id.* at 6. As a result, the Court ruled that plaintiff was entitled to a preliminary injunction requiring defendant to maintain R.S.'s educational placement at CMCA for the pendency of the due process proceeding, including any appeal of the ALJ's decision on the merits. *Id.* Plaintiff's motion for a preliminary injunction was denied in all other respects. *Id.* at 7.

On November 6, 2014, plaintiff filed a notice of appeal, which indicates that plaintiff intends to challenge the portion of the Court's order "denying Petitioner's request that Respondent be required to provide R.S. with private school placement and related services during the pendency of IDEA proceedings." Docket No. 28. On

---

²Although the hearing was originally scheduled to resolve only that portion of plaintiff's motion which sought a temporary restraining order, *see* Docket No. 8, the parties agreed at the hearing to convert the hearing to one for a preliminary injunction. Docket No. 21 at 1-2.

November 14, 2014, defendant filed the present motion. Docket No. 33. The Tenth Circuit ordered plaintiff's appeal held in abeyance pending the Court's resolution of the present motion. Docket No. 36 at 1. On December 16, 2014, plaintiff filed a complaint challenging the ALJ's decision dismissing her due process complaint. *Smith v. Cheyenne Mountain Sch. Dist. 12*, 14-cv-03390-PAB-CBS (Docket No. 1). Thus, the stay-put provision remains in effect. *See Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036 (9th Cir. 2009) (holding that stay-put provision applies through appeal to circuit court).

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, *see Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995), and, where a party files a motion for reconsideration prior to the entry of judgment or of a final order, Rules 59(e) and 60(b) do not apply. *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92. However, in order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g.*, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory

order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1-2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order); *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (applying law of the case doctrine to motion for reconsideration of interlocutory order).  Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.  Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion."  *Servants of the Paraclete v. Does*, 204 F. 3d 1005, 1012 (10th Cir. 2000).

## III.  ANALYSIS

### A.  Current Educational Placement

Defendant argues that the Court erred in its interpretation of the term "current educational placement."  Docket No. 33 at 10.  The IDEA's stay-put provision provides

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the *then-current educational placement* of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j) (emphasis added).  The Court recognized that determining R.S.'s current educational placement was the relevant inquiry, stating:

> The Tenth Circuit has recognized that a student's current educational placement can be determined by examining the "IEP in place when the stay-put provision is invoked" and any other relevant facts relevant to a student's current educational placement.  *Erickson v. Albuquerque Pub. Schs.*, 199

> F.3d 1116, 1121 (10th Cir. 1999). The stay-put provision is not construed so narrowly as to require that the student remain in the exact physical location where the student was receiving services, but schools are not permitted to "'make changes that may have a significant effect on a child's learning experience.'" *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 141 (3d Cir. 2013) (unpublished) (quoting *DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 154 (3d. Cir. 1984)).

Docket No. 21 at 4. In support of its argument that the Court's analysis of R.S.'s current educational placement was "rigid," defendant cites *Erickson* and states that the Tenth Circuit has defined "educational placement" as falling "'somewhere between the physical school attended by a child and the abstract goals of a child's IEP.'" Docket No. 33 at 10 (quoting *Chavez ex rel. M.C. v. N.M. Pub. Educ. Dep't*, 621 F.3d 1275, 1282 (10th Cir. 2010)). The Court does not perceive a meaningful difference between the Court's articulation of current educational placement framework and the Tenth Circuit authority upon which defendant relies, nor does defendant identify any such difference.

In support of its argument, defendant cites cases from the First, Fourth, Ninth, and D.C. Circuits, Docket No. 33 at 11, all of which articulate the current educational placement framework slightly differently, but none of which appear to substantially differ from the standard discussed by the Tenth Circuit and employed by the Court.[3]  *See, e.g.*, *AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 682 (4th Cir. 2004) ("'educational placement' is not the location to which the student is assigned but rather the environment in which educational services are provided"). Ultimately, however,

---

[3]Defendant also argues that the Court should have given greater weight to the Colorado Department of Education's definition of current educational placement, but such an argument is unsupported. Defendant's brief does not set forth or cite to the definition upon which it relies. Moreover, defendant also fails to explain why such a definition has greater persuasive weight than Tenth Circuit case law on the subject.

defendant fails to establish that even the most liberal current educational placement analysis would compel the result it seeks.  The determination of a child's current educational placement is, in any analysis, a fact specific inquiry.  *See Hale ex rel. Hale v. Poplar Bluff R-1 Sch. Dist.*, 280 F.3d 831, 834 (11th Cir. 2002); *J.F. v. Byram Twp. Bd. of Educ.*, 2014 WL 5816932, at *3 (D.N.J. Nov. 7, 2014).  Although defendant attempts to characterize R.S.'s hypothetical enrollment in the Falcon School District as nothing more than a change in physical location, the evidence presented at the hearing was insufficient to show that R.S.'s enrollment in the Falcon School District would serve to maintain R.S.'s current educational placement under any reasonable definition of the term.[4]  Defendant does not call attention to evidence presented at the hearing that would compel a different conclusion, nor does defendant dispute the Court's finding that, based upon the evidence presented at the preliminary injunction hearing, "to conclude that the Falcon School District could provide R.S. a free and appropriate public education as defined by the May 2014 IEP would be pure speculation."  Docket No. 21 at 5.

Defendant attempts to cure this deficiency by providing an affidavit from Zachary Craddock, Director of Special Education for the Falcon School District.  Docket No. 33-1

---

[4]Federal regulations require that, if a child with an existing IEP transfers to a new public agency in the same state, the new public agency must provide the child "services comparable to those described in the child's IEP from the previous public agency."  34 C.F.R. § 300.323(e).  However, defendant did not cite this regulation in support of its arguments at the preliminary injunction hearing.  Moreover, this regulation does not appear to relieve the Court from making a stay-put determination based upon the evidence presented by the parties.  *Cf. J.F.*, 2014 WL 5816932, at *4 (affirming ALJ's factual findings that new public agency "offered . . . educational services comparable to those available" at child's old school).

at 42. Mr. Craddock states that he has reviewed the May 2014 IEP and that the Falcon School District would have "no problems accepting [the IEP] as written and providing the services described therein." *Id.* at 43, ¶ 5. Defendant argues that it had no reasonable notice that the issue of the Falcon School District's ability to accommodate R.S. would arise at the preliminary injunction hearing and argues that, if "this matter [had] been properly noticed," defendant would have prepared for the argument and called Mr. Craddock as a witness. Docket No. 40 at 8. However, throughout this dispute, defendant has taken the position that CMCA was not required to enroll R.S. because R.S. could return to the Falcon School District – his district of residence – to receive special education services. *See, e.g.*, Docket No. 17 at 2 ("What Petitioner continually fails to acknowledge is that the only thing preventing her son from receiving a Free Appropriate Public Education is her refusal to enroll him in a school within the Falcon School District, her district of residence."). Thus, defendant can hardly claim surprise that the Falcon School District's ability to maintain R.S.'s current educational placement was an issue at the preliminary injunction hearing. As a result, defendant does not justify its failure to present testimony from Mr. Craddock at the preliminary injunction hearing and, as a result, the Court finds it inappropriate to consider Mr. Craddock's affidavit in resolving the present motion. *See Servants of Paraclete*, 204 F.3d at 1012 (noting that supporting facts that were previously available are rarely a basis for a motion for reconsideration).[5]

---

[5] Mr. Craddock's affidavit also states that plaintiff completed an online enrollment application for R.S. to the Falcon School District on September 29, 2014. Docket No. 33-1 at 43, ¶ 4. The Court declines to consider this portion of Mr. Craddock's affidavit for the same reasons.

### B. Procedural Arguments

#### 1. IDEA's Appeal Procedures

Defendant argues that, because the Court considered plaintiff's request for stay-put relief as an appeal of the ALJ's decision on the issue,[6] the Court erred in disregarding the IDEA's appeal provisions as set forth in 34 C.F.R. § 300.516 or 20 U.S.C. § 1415(i)(2). Docket No. 33 at 8-9.

The IDEA provides that:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A). Once an action is filed, the court receives the administrative record, receives additional evidence if requested, and is entitled to grant "such relief as the court determines is appropriate." § 1415(i)(2)(C). However, where, as here, a party seeks a determination under the stay-put provision, § 1415(j), exhausting the administrative remedies set forth in § 1415 "would be inadequate because the stay-put provision (and therefore the preliminary injunction) is designed precisely to prevent harm while the proceeding is ongoing." *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010). If the child is removed from his or her current educational placement, then "the deprivation of the right has occurred. The completion of the administrative process cannot remedy the

---

[6] Defendant does not appear to dispute the Court's characterization of plaintiff's complaint as an appeal.

harm." *Id.* Thus, "'an immediate appeal is necessary to give realistic protection to the claimed right'" and "access to immediate interim relief is essential for the vindication of this particular IDEA right." *Murphy v. Arlington Central Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199-200 (2d Cir. 2002) (quoting *Miss America Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d Cir. 1991)).

At the preliminary injunction hearing, the Court understood defendant to argue that plaintiff was prohibited from mounting a challenge to the ALJ's stay-put ruling prior to filing a civil action challenging the ALJ's decision on the merits under § 1415(i)(2). To whatever extent defendant's motion again raises that argument, such an argument is without merit. *See* Docket No. 21 at 3. In the present motion, defendant seems particularly concerned about the fact that the Court did not have access to the full administrative record before rendering its decision on stay-put relief, arguing that

> it was important for the Court to have relevant portions of the record of the due process proceedings available to it before rendering a decision in this case, particularly when a plaintiff has failed to prevail on any of the claims in a due process complaint and where the plaintiff has offered no evidence that FAPE was not provided to their child . . . .

Docket No. 33 at 9-10.[7] The Court understands defendant to argue that, because plaintiff's underlying due process action is unlikely to be successful, plaintiff is not entitled to stay-put relief.[8] Defendant misunderstands the stay-put provision. The stay-

---

[7]Defendant also argues that it has not "refused to follow a stay-put order" and that "the judge has failed to issue a ruling on stay-put placement." Docket No. 33 at 10. Defendant, however, does not explain the relevance of such arguments and none is apparent.

[8]Defendant's position on this issue is inconsistent. Later in its brief defendant acknowledges that "Courts have interpreted the stay-put provision to apply even in cases where the parents have not prevailed at the due process level because the

10

put provision reflects "Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (quotation omitted). As such, the inquiry in a stay-put case is limited to identifying the "then-current educational placement." § 1415(j); *Drinker*, 78 F.3d at 865 n.13. The merits of plaintiff's due process complaint are therefore irrelevant in determining R.S.'s current educational placement.

To the extent defendant's brief can be construed as arguing that the Court should have waited for transmission of the entire record before ruling on the stay-put issue, defendant fails to establish that the Court's decision in this respect was clearly erroneous. First, as the Court noted at the preliminary injunction hearing, § 1415(i) does not specify which party has the burden of providing the complete administrative record. Defendant was free to provide relevant portions of the administrative record to the Court at the preliminary injunction hearing or call attention to those portions of the administrative record that were at the time unavailable. Defendant did not do so. Second, as discussed above, defendant fails to identify any previously unavailable evidence from the administrative record that would compel a different conclusion on the relevant determination. As for the ALJ's findings on the stay-put issue, the Court applied the appropriate standard of review, referred to as a "modified de novo" standard, which requires the district court to "give 'due weight' to the hearing officer's

---

parents might prevail in an appeal of an unfavorable decision." Docket No. 33 at 14.

findings of fact." *Sytsema ex rel. Sytsema v. Academy Sch. Dist. No. 20*, 538 F.3d 1306, 1311 (10th Cir. 2008) (quotations omitted). Because the ALJ's stay-put decision made no findings of fact relevant to determining R.S.'s current educational placement, there were no findings of fact to defer to.

### 2. Fed. R. Civ. P. 65

Defendant argues that plaintiff failed to satisfy Fed. R. Civ. P. 65 and that the Court erred in failing to indicate whether plaintiff "established any of the prerequisites for obtaining injunctive relief." Docket No. 33 at 8. However, because the motion for stay-put "functions as an 'automatic' preliminary injunction," courts generally hold that the moving party "need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief." *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009). Defendant's argument fails to recognize this authority. The ALJ's stay-put decision may have been somewhat unusual in that it discussed the stay-put issue, but did not determine R.S.'s then current educational placement. Docket No. 33-1 at 31. However, because the ALJ did not determine R.S.'s current educational placement – which defendant does not dispute –, plaintiff was entitled to an automatic preliminary injunction and was not required to satisfy the factors traditionally required for injunctive relief. *See Joshua A.*, 559 F.3d at 1037. Defendant's argument is therefore without merit.

### 3. Burden of Proof

Defendant argues that the Court erred in placing upon defendant "the burden of proof to establish why the motion should <u>not</u> be granted." Docket No. 33 at 8.

Defendant misconstrues the Court's order. The Court was required to determine R.S.'s current educational placement – nothing more, nothing less. Plaintiff presented sufficient evidence upon which to conclude that CMCA was R.S.'s current educational placement. The Court ruled that "[t]he fact that the May 2014 IEP lists CMCA as R.S.'s school of attendance and the fact that R.S. attended only CMCA in the time leading up to the filing of the due process complaint indicates that CMCA is R.S.'s current educational placement for purposes of the stay-put provision." Docket No. 21 at 4-5. Defendant attempted to overcome this evidence primarily by arguing that, because the Falcon School District could accommodate R.S.'s educational needs, defendant was excused from any stay-put obligation. Where, as here, a school district defends itself in a stay-put action by arguing that an alternative placement can maintain the status quo, courts appropriately require the school district to provide some evidence that the proposed alternative placement can satisfy § 1415(j)'s mandate. *See Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 550 (7th Cir. 1996) ("because of the school district's failure to produce any placement alternatives, the district court had no other schools to evaluate or weigh against Kid's Peace"); *Eley v. District of Columbia*, --- F. Supp. 2d ----, 2014 WL 2507937, at *12 (D.D.C. June 4, 2014) (finding that school district failed to show that proposed shift from new school constituted maintenance of student's current educational placement); *see also L.Y. ex rel. J.Y. v. Bayonne Bd. of Educ.*, 2009 WL 2998153, at *4 (D.N.J. Sep. 15, 2009) ("to find that the not-yet commenced placement at the Community School is J.Y.'s stay-put

placement would not further the purpose of the IDEA's stay-put provision").[9] Notwithstanding the fact that defendant's argument does not track § 1415(j) and relevant caselaw, such a defense could succeed only if defendant provided evidence upon which to conclude that R.S.'s enrollment in the Falcon School District would maintain R.S.'s then current educational placement. As discussed above, to so conclude based upon the evidence before the Court at the preliminary hearing would have been speculative. The Court ruled that sufficient evidence existed to conclude the R.S.'s current educational placement was CMCA, evidence which defendant failed to successfully rebut.

### *4. Colorado School Choice Law*

Defendant argues that the Court's decision "ignores the unique circumstances presented by the Colorado School Choice Law," Colo. Rev. Stat. § 22-36-101 *et seq.* Docket No. 33 at 12. Defendant contends that enrolling R.S. in CMCA during the 2014-2015 school year would require CMCA to hire additional staff, which, pursuant to § 22-36-101(3)(a),[10] allows CMCA to deny enrollment to R.S. *Id.* However, Congress has not created a "school choice" exception to the stay-put provision. To the extent defendant argues that the Court ignored Colorado school choice law, defendant is

---

[9]If defendant's argument were taken to its logical end, school districts could deny enrollment or change students' placements at will unless a parent or student could marshal enough evidence to show that no other placement could meet a student's special education needs. Such a scenario is inconsistent with the stay-put provision's mandate upon school districts to maintain the status quo. Moreover, neither § 1415(j) nor relevant case law places such a burden solely on parents and children.

[10]A school district may deny a nonresident pupil permission to enroll in particular programs of schools only for specific reasons, including "a lack of space or teaching staff within a particular program or school." § 22-36-101(3)(a).

incorrect. At the preliminary injunction hearing, the Court addressed the issue of school choice, ruling that the Colorado school choice law did not allow defendant to avoid its obligations under the stay-put provision. In support of its ruling, the Court discussed the Seventh Circuit's decision in *Casey K. by Norman K. v. St. Anne Community High School District No. 302*, 400 F.3d 508, 510 (7th Cir. 2005), where the court considered a stay-put dispute where the plaintiff's elementary school and high school, even though blocks apart, was each its own school district. While enrolled in the elementary school district, the plaintiff and the elementary school entered into a settlement agreement to pay for the plaintiff to attend private school. *Id.* After the plaintiff reached high school age, the high school completed a new IEP, but did not authorize enrollment in the private school. *Id.* Plaintiff filed a due process complaint challenging the high school's decision, but remained enrolled at the private school. *Id.* The Seventh Circuit rejected the high school's argument that it was not required to pay for plaintiff's private school during the pendency of the due process action, reasoning that the IDEA provides financial assistance to "*states* conditioned on the *states* . . . paying for the private education of disabled children" and that the state could not avoid the Act's requirements "by multiplying the number of its school districts. It would make no sense if, simply by dividing all its school districts in half and thus doubling their number, a state could reduce the expense to it of compliance with the conditions in IDEA without surrendering a penny of IDEA funds." *Id.* at 511-12.[11] In an unpublished decision, the Third Circuit

---

[11]The Seventh Circuit also noted that stay-put protection extends between grades. *Id.* at 511. ("It's not as if the break between eighth and ninth grade, or between tenth and eleventh grade, is so much sharper than any other grade break as to make temporary continuation of the previous educational placement inappropriate.").

15

considered whether Pennsylvania's mandatory attendance law excused a school district from complying with the stay-put provision. *R.B. v. Mastery Charter School*, 532 F. App'x 136 (3d Cr. 2013) (unpublished).  The court found the Pennsylvania attendance law – the school district's purported reason for dis-enrolling the plaintiff – was irrelevant. *Id.* at 141-42.  The court ruled that the state law was conflict preempted by the stay-put provision because it was impossible for the school district to comply with both laws simultaneously.  *Id.*

Defendant does not address or attempt to distinguish this authority.  Instead, defendant relies on a decision in *R. Smith (a minor), by and through his mother, Ramona Smith v. Cheyenne Mountain Charter Academy*, No. 2014CV339 (Dist. Ct. El Paso Cnty., Colo.), a collateral proceeding in which plaintiff sought a ruling that CMCA was required to maintain R.S.'s enrollment pursuant to Colorado school choice law. *See* Docket No. 45-1 at 1-4.  The state court ruled that Colorado school choice law did not compel CMCA to enroll R.S. for the 2014-2015 school year.  Docket No. 33-1 at 49. What defendant fails to mention is that the El Paso County District Court correctly recognized that this Court's stay-put decision was entirely separate from a ruling on CMCA's compliance with § 22-36-101.  *Id.* at 48.  Thus, the collateral state court proceeding is irrelevant to the Court's stay-put decision and does not call into question *Casey K.* and other relevant authority on this issue.

Defendant argues that plaintiff and other parents of special education students enrolled under § 22-36-101 outside their district of residence may be incentivized to file unmeritorious due process complaints and invoke the stay-put provision as a way of

circumventing Colorado school choice law. Docket No. 33 at 15. However, such concerns are beyond the scope of this dispute and are perhaps best addressed simply by presenting credible evidence that a district of residence can maintain a student's current educational placement, which defendant failed to do here. For the foregoing reasons, defendant's argument on this issue does not establish that the Court's order was clearly erroneous.

### C. Plaintiff's Use of the Stay-Put Provision

Defendant contends that plaintiff has abused the stay-put provision by changing positions during the course of this dispute. Docket No. 33 at 13. Defendant argues that, when appearing before the ALJ on the stay-put issue, plaintiff requested only that plaintiff be placed in private school. *Id.* Defendant asserts that plaintiff sought placement of R.S. at CMCA only after initiating the present lawsuit. *Id.* at 13-14. Defendant argues that plaintiff's change of position renders her current claims incredible because it is equally "'pure speculation' . . . that a private school to be subsequently selected by Mr. and Mrs. Smith could provide [necessary] services." *Id.* at 14.

As a threshold matter, the Court denied plaintiff's request to place R.S. in a private school. Thus, whether an unnamed private school could constitute a then-current educational placement is irrelevant to the present motion. The Court therefore turns to plaintiff's arguments before the ALJ. According to the ALJ's stay-put decision, plaintiff's motion for stay-put relief asserted that CMCA was R.S.'s current educational placement, but sought private school placement because CMCA refused to accept R.S.


as a student, Docket No. 33-1 at 29, a request plaintiff reiterated at the telephone hearing before the ALJ:

> MS. SMITH: I just wanted to remind the Court that in our motion, we did not ask that [R.S.] go back to CMCA, and we also made an argument as to why [R.S.] should not go to D49.
>
> What we did ask for in our motion, which seems to have been missed by the Defendants, is that we wanted private schooling for [R.S.].

Docket No. 33-1 at 21, p. 21:18-24.[12] Ms. Smith's position at the telephone hearing may explain why the ALJ did not determine R.S.'s then current educational placement, but it is not necessarily inconsistent with her position in this lawsuit. In both instances, Ms. Smith appears to have asserted that CMCA was R.S.'s current educational placement, but sought placement at a private school based upon CMCA's unwillingness to enroll R.S. for the 2014-2015 school year. However, defendant's attack on plaintiff's credibility does not overcome the fact that there is insufficient evidence to conclude that R.S.'s current educational placement is anywhere but CMCA. For purposes of plaintiff's preliminary injunction, this ends the stay-put inquiry.[13]

## IV. CONCLUSION

For the foregoing reasons, defendant fails to provide a sufficient basis for the Court to find that its prior ruling was clearly in error. It is therefore

---

[12] Defense counsel mentioned Ms. Smith's position in front of the ALJ at the preliminary injunction hearing. As such, this issue is properly before the Court. *See Servants of Paraclete*, 204 F.3d 1012.

[13] The Tenth Circuit has abated plaintiff's appeal pending the Court's resolution of defendant's motion. Docket No. 36. Thus, plaintiff's argument that the Court lacks jurisdiction to decide the present motion is without merit. Docket No. 37 at 2. The Court need not reach the remainder of plaintiff's arguments.

**ORDERED** that Motion to Reconsider and Vacate Order Issued October 17, 2014 [Docket No. 33] is **DENIED**.

DATED August 20, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge