IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02651-PAB-CBS

RAMONA SMITH,

    Plaintiff,

v.

CHEYENNE MOUNTAIN SCHOOL DISTRICT 12,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Motion for Clarification of Preliminary Injunction Order [Docket No. 39] and the Verified Motion for Order to Show Cause [Docket No. 46] filed by plaintiff Ramona Smith. The relevant background facts have been set forth elsewhere and will not be restated here except as relevant to resolving the present motions. *See* Docket No. 59 at 1-4.

**I. MOTION FOR CLARIFICATION**

On December 4, 2014, plaintiff filed a Motion for Clarification of Preliminary Injunction Order ("motion for clarification") [Docket No. 39], seeking clarification as to the effect of the Court's order granting in part plaintiff's motion for a preliminary injunction (the "stay-put order") [Docket No. 21] pursuant to the Individuals with Disabilities Education Act's ("IDEA") "stay-put" provision, 20 U.S.C. § 1415(j). The reason for plaintiff's motion appears to be concern over the effect of the stay-put order on *R. Smith (a minor), by and through his mother, Ramona Smith v. Cheyenne*

*Mountain Charter Academy*, No. 2014CV339 (Dist. Ct. El Paso Cnty., Colo.), a collateral proceeding in which plaintiff sought a ruling that the Cheyenne Mountain Charter Academy ("CMCA") was required to maintain R.S.'s enrollment pursuant to Colorado school choice law, Colo. Rev. Stat. § 22-36-101 *et seq. See* Docket No. 45-1 at 1-4. The state court ruled that Colorado school choice law did not compel CMCA to enroll R.S. for the 2014-2015 school year, but acknowledged that its decision was separate from this Court's stay-put order. *Id.*

In the present motion, plaintiff argues that the stay-put order had the effect of vacating the ALJ's stay-put order in its entirety and overturning the ALJ's rulings regarding Colorado school choice law. Docket No. 39 at 6-7. Plaintiff contends that, "without an explicit written clarification of this Court's Order, the respondent will continue to erroneously argue in state court that this Court did not overturn [the ALJ's] application of the School Choice law to R.S., and that that aspect of [the ALJ's] order somehow magically survived this Court's reversal of the decision." *Id.* at 7. Defendant argues that plaintiff's motion for clarification is unnecessary because the state court's order concerned only Colorado school choice law, not stay-put relief under 20 U.S.C. § 1415(j). Docket No. 45 at 1.

Plaintiff fails to identify any ambiguity in the Court's stay-put order. As plaintiff's complaint indicates, this action is brought solely under 20 U.S.C. § 1415(j). Docket No. 1 at 1. Thus, R.S.'s current educational placement as contemplated by § 1415(j) is the only issue in the present case. At the preliminary injunction hearing, the Court directed defendant to maintain R.S.'s current educational placement at CMCA pursuant to § 1415(j). The issue of whether plaintiff was entitled to relief under Colorado school

choice law was not raised in the present case and, therefore, was not before the Court in resolving plaintiff's request for stay-put relief.

Plaintiff nonetheless argues that the Court ruled on Colorado school choice law; in doing so, plaintiff misinterprets the Court's order. Docket No. 39 at 6-7. Defendant's position throughout this dispute has been, in part, that its decision to deny R.S. enrollment at CMCA was appropriate under Colorado school choice law. Although the Court recognized that Colorado school choice law may control R.S.'s placement in the future, the Court ruled that Colorado school choice law was irrelevant for purposes of analyzing R.S.'s current educational placement under § 1415(j). The Court noted that, to the extent Colorado school choice law is in conflict with the stay-put provision, the stay-put provision may preempt Colorado school choice law. Thus, the Court's ruling did not in any way rest on Colorado school choice law; rather, the Court merely rejected defendant's argument that Colorado school choice law justified its decision regarding R.S.'s enrollment. No other aspect of the Court's ruling concerned Colorado school choice law. The Court's order is sufficiently clear in all other respects.

## II. MOTION FOR ORDER TO SHOW CAUSE

On December 13, 2014, plaintiff filed a Verified Motion for Order to Show Cause [Docket No. 46]. Plaintiff claims that defendant has violated the stay-put provision and the stay-put order.

The parties do not dispute that R.S. has been attending CMCA since October 17, 2015. Docket No. 46 at 7; Docket No. 47 at 3. On November 5, 2014, R.S.'s "IEP

team"[1] met with plaintiff for an annual review of R.S.'s IEP.  Docket No. 46 at 8.  A proposed draft IEP (the "draft IEP") was provided to plaintiff.  *Id.*; Docket No. 46-4.  The draft IEP lists CMCA as R.S.'s school of attendance and indicates that R.S.'s eligibility for extended school year ("ESY") services[2] will be determined by April 15th.  Docket No. 46-4 at 1, 3.  On November 23, 2014, plaintiff emailed defendant's director of special education Karen Higgins, expressing multiple concerns regarding the draft IEP.  Docket No. 46-4 at 5.  Plaintiff's email stated, among other things, that R.S.'s academic performance was lacking, that R.S. should be provided with "full time, one-on-one access to a Board Certified Behavior Analyst," and that R.S.'s IEP should call for R.S. to receive ESY services.  *Id.*  Plaintiff also reiterated her request that R.S. be placed in private school.  *Id.*

On December 5, 2014, R.S.'s new IEP (the "2015 IEP") was finalized.  *See* Docket No. 46-5 at 1.  The 2015 IEP lists CMCA as R.S.'s school of attendance, but a handwritten footnote further states that,

> [R.S.] is currently attending Cheyenne Mountain Charter Academy during the pendency of a due process complaint filed by Mr. + Mrs. Smith per order of the U.S. District Court for the District of Colorado.  The order expires once the due process case is no longer pending or the order is overturned.

*Id.*  The 2015 IEP indicates that R.S.'s eligibility for ESY services will be determined by

---

[1] Plaintiff does not identify the members of R.S.'s IEP team, except to indicate that it included those persons identified in § 1414(d)(1)(B) and a representative from the Falcon School District.  Docket No. 49 at 2.

[2] Although neither party explains the term, ESY services appear to refer to a summer school program designed for students who require remedial classes.  *See generally* Docket No. 46-4 at 1, 3.  CMCA provided ESY services to R.S. during the summer of 2014.  Docket No. 33-1 at 28.

April 15, 2015, explaining that

> The IEP and [R.S.'s] parent agreed that the student had not been in attendance for a long enough period of time to determine whether there was severe regression such that there was no recoupment or very slow recoupment of skill. . . . New goals were added for which there is not data regarding regression/recoupment; therefore, a determination will be made in April of 2015 whether [R.S.] is in attendance at CMCA or another school.

*Id.* at 3. The 2015 IEP further indicates that "Services will continue to be provided at the Cheyenne Mountain Charter Academy until the preliminary injunction ordered by Judge Brimmer expires or is overturned on appeal, whichever occurs first." *Id.* at 4.

## A. Analysis

Plaintiff argues that defendant has committed four violations of the stay-put provision and the stay-put order. However, before proceeding to the merits of plaintiff's arguments, the Court notes that the stay-put provision requires the maintenance of a student's "then-current educational placement." § 1415(j). This case was brought solely under § 1415(j). *See, e.g.*, Docket No. 1 at 1 ("Petitioner therefore seeks relief . . . directly under Section 1415(j)"). The Court has ruled that CMCA is R.S.'s current educational placement, a ruling which plaintiff does not appear to dispute.[3] Thus, in resolving plaintiff's motion, the Court is limited to addressing only those issues that

---

[3]Plaintiff is appealing the portion of the stay-put order denying plaintiff's request that R.S. be placed in a private school, Docket No. 28 at 1, but plaintiff has not indicated that she otherwise disputes the Court's ruling that CMCA is R.S.'s current educational placement. In the present motion, plaintiff states that, "In light of the Respondent's unilateral months-long termination of R.S.'s placement and all of his IEP services, it is respectfully submitted (and mutually agreed upon by the parties) that there was no such placement to 'maintain.'" Docket No. 46 at 7 n.4. Plaintiff does not elaborate or otherwise explain this statement. Nor is it apparent to the Court how this statement, if true, would affect the present motion. As a result, the Court does not interpret plaintiff's motion as a challenge to the Court's stay-put determination.

pertain to whether defendant is maintaining R.S.'s current educational placement pursuant to § 1415(j) and the stay-put order. *See Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 865 n.13 (3d Cir. 1996). To the extent plaintiff claims that defendant committed procedural violations while preparing the 2015 IEP, such claims are outside the scope of this case and will not be considered in resolving the present motion.

### *1. Changes to R.S.'s IEP*

Plaintiff argues that, after the November 5, 2014 IEP meeting, defendant improperly changed R.S.'s IEP to permit CMCA to remove R.S. "prior to the IEP's November 5, 2015 service end date." Docket No. 46 at 1. Specifically, plaintiff appears to argue that any statements concerning the stay-put order were improperly included in the 2015 IEP. Docket No. 49 at 3. Defendant responds that the stay-put order requires CMCA to maintain R.S.'s placement at CMCA until any appeals of the underlying due process complaint are complete, not until "'the IEP's November 5, 2015 end date.'" Docket No. 47 at 3 (quoting Docket No. 46 at 1).

Plaintiff fails to establish that the challenged statements contained in the 2015 IEP infringe upon R.S.'s right to a free and appropriate public education or otherwise substantively alter R.S.'s current educational placement. Rather, the challenged additions appear to be entirely procedural and do not purport to, for example, alter the degree of academic support that R.S. should receive. Plaintiff does not argue otherwise. Moreover, the challenged alterations to the 2015 IEP appear to accurately represent the extent of defendant's obligation to maintain R.S.'s enrollment under the stay-put provision as ordered by the Court. *Compare* Docket No. 21 at 7 *with* Docket No. 46-5 at 1, 4. As a result, plaintiff's argument is insufficient to show that defendant

is in violation of § 1415(j) or has failed to comply with the stay-put order.[4]  Plaintiff's remaining arguments on this issue accuse defendant of committing procedural violations in preparing the 2015 IEP.  Such arguments are not appropriately raised in this case and, therefore, will not be addressed.

### 2. ESY Services

Plaintiff argues that, because R.S. was previously entitled to ESY services, the 2015 IEP changed the status quo by holding "in abeyance that determination of R.S.'s Extended School Year services."  Docket No. 49 at 4.  Defendant argues that the stay-put order did not mandate that R.S. be provided ESY services.  Docket No. 47 at 4.  Defendant also argues that the 2015 IEP does not state that R.S. is not eligible for ESY services, only that a determination of his eligibility will be determined in April 2015.  *Id.* at 5.

The Court need not decide whether ESY services are part of R.S.'s current educational placement.  Defendant has not indicated that it will deny R.S. such services; thus, even if ESY services are part of R.S.'s current educational placement, there has been no definitive proposed change with respect to ESY services.  Plaintiff's argument is therefore premature.  Moreover, the 2015 IEP explains that R.S.'s eligibility for ESY services will be made based upon R.S.'s new educational goals, for which no data was available at the time the 2015 IEP was drafted.  As Ms. Higgins further

---

[4]Plaintiff's argument appears premised on a belief that the 2015 IEP mandates R.S.'s enrollment at CMCA until the 2015 IEP's "end date" of November 5, 2015.  Docket No. 46 at 1.  However, it is not entirely clear that the "End Date" of November 15, 2015 contained in the 2015 IEP mandates continued enrollment rather than, for example, simply indicating the date by which R.S.'s educational needs should be reevaluated and a new IEP created.  *See* Docket No. 46-5 at 1, 4.

explains, "[R.S.] had only been in school for 9 days . . . prior to the IEP meeting. The IEP team did not feel that they had enough information to make the annual determination about the [ESY] services for him. While [R.S.] showed some regression, he also showed improvement." Docket No. 47-1 at 3, ¶ 3. Ms. Higgins' explanation appears reasonable and plaintiff does not otherwise dispute the wisdom of gathering more information before making a decision on R.S.'s need for ESY services.[5]

Plaintiff's argument appears to be additionally premised on a belief that, in order to maintain R.S.'s current educational placement, CMCA must continue to implement "the *entirety* of R.S.'s May 1, 2014 IEP." Docket No. 49 at 5. However, if that were true, school districts would be powerless to modify an IEP in response to changes in a student's educational needs whenever a stay-put order is in effect. The Court does not interpret the stay-put provision so strictly. *See O'Toole By and Through O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 702 (10th Cir. 1998) ("the implementation of the program is an on-going, dynamic activity, which obviously must be evaluated as such"). For the foregoing reasons, plaintiff fails to show that defendant violated the stay-put order with respect to ESY services.

### 3. Academic Support

Plaintiff claims that defendant is not providing R.S. with "intensive one-on-one para-professional support." Docket No. 46 at 1, 11. In support of her argument, plaintiff provides examples of homework assignments R.S. completed at school, Docket

---

[5]Ms. Higgins also states that, at the IEP meeting, plaintiff was in agreement with defendant's decision regarding ESY eligibility. *Id.* at 4, ¶ 6. Plaintiff does not squarely dispute Ms. Higgins' recollection of the IEP meeting.

No. 46-4 at 6-7, and homework assignments R.S. completed at home. *Id.* at 8-9. Plaintiff argues that the assignments R.S. completes at school are unsatisfactory and that, each day after R.S. returns home from school, plaintiff "has R.S. erase these scribbles and redo the schoolwork at the level he is capable of performing." Docket No. 49 at 7.

In response, defendant provides an affidavit from R.S.'s first grade teacher Elizabeth Wilson, who states that

> the quality of [R.S.'s] work has steadily improved since his return to CMCA in October. In fact, his work might have improved even more were he at school more consistently. As of . . . December 15th, [R.S.] has missed 10 of 35 instructional days since he has been back in school here, or slightly more than 28% of the school days. Mrs. Smith hasn't contacted me once since her son came back to CMCA in October to register any concern about his academic progress or work.

Docket No. 47-1 at 5, ¶ 2. Plaintiff does not squarely dispute Ms. Wilson's analysis of R.S.'s academic progress. Docket No. 49 at 6-7.

The IDEA guarantees "access and opportunity." *Thompson R2-J Sch. Dist. v. Luke P. ex rel. Jeff P.*, 540 F.3d 1143, 1151 (10th Cir. 2008). Academic progress is a factor in ascertaining whether an IEP is "reasonably calculated to provide educational benefit." *CJN v. Minneapolis Pub. Schs.*, 323 F.3d 630, 642 (8th Cir. 2003). However, the IDEA "does not require that schools attempt to maximize a child's potential, or, as a matter of fact, guarantee that the student actually make any progress at all. It requires only that the student be provided with an IEP that is reasonably calculated to provide educational benefit . . . ." *Id.*

Plaintiff appears to be sincere in her belief that R.S. can better complete certain academic assignments at home. However, the IDEA does not, as plaintiff's argument

9

suggests, guarantee academic progress. *See CJN*, 323 F.3d at 642. Plaintiff does not dispute Ms. Wilson's statement that plaintiff has not visited R.S.'s classroom or otherwise contacted R.S.'s teachers to discuss her concerns. Docket No. 47-1 at 5-6, ¶¶ 2-3. Moreover, as a factual matter, plaintiff's dissatisfaction with R.S.'s academic progress does not, by itself, establish that R.S.'s academic support is insufficient or in violation of R.S.'s IEP. Throughout her briefs, plaintiff expresses a belief that defendant "continues to be unwilling to provide R.S. with the intensive one-on-one para-professional support for academic instruction as called for in his May 1, 2014 IEP." *See, e.g.*, Docket No. 49 at 6 (quotations omitted). Although CMCA determined that it would need to hire additional staff in order to accommodate R.S. for the 2014-2015 school year, this was defendant's stated reason for denying R.S. enrollment pursuant to Colorado school choice law prior to the present dispute. *See* Docket No. 46-3 at 8. The fact that CMCA at one time denied R.S. enrollment because it could not accommodate him without hiring additional staff does not, by itself, suggest that CMCA or defendant is now unwilling or unable to comply with the stay-put order. Plaintiff provides no other basis for her belief that defendant has refused to provide R.S. with the services contemplated by his IEP and no such basis is apparent from the record. Similarly, the mere fact that defendant continues to oppose plaintiff's position in this litigation does not indicate that defendant is not complying with the stay-put order. Plaintiff's argument on this issue is therefore unsupported.

### *4. Lunchtime Support*

Plaintiff claims that R.S. "repeatedly" returns home from CMCA without having opened the lunch he brought to school. Docket No. 46 at 11. Plaintiff contends that,

because R.S. does not have the functional skills to unpack his own lunch, the fact that R.S. returns home with his lunch unopened further establishes that defendant is not providing R.S. sufficient academic support. *Id.* In response, defendant refers to Ms. Wilson's affidavit. Docket No. 47 at 6. Ms. Wilson states that R.S. eats lunch in her classroom and that plaintiff's claim is "completely untrue and she has not once visited my classroom, either during instructional or lunch time, to verify her allegation." Docket No. 47-1 at 5-6, ¶ 3. Ms. Wilson further explains that

> [R.S.] has been allowed to heat his lunch in the microwave every day since his return to CMCA. He often does not eat the entrée his mother sends (he says he doesn't like it), and instead chooses the Goldfish crackers and other processed snacks that are also packed in his sack lunch. He is encouraged every day by me, his paraprofessional, and the classroom aide to eat his main course, and we have even tried offering him incentives, such as allowing him to sit near the microwave (he is fascinated by the fan) if he will eat. He is the only student in the class who is allowed to heat his lunch every day.

Docket No. 47-1 at 5-6, ¶ 3-4. Plaintiff does not directly dispute Ms. Wilson's explanation, but instead states that she sent defendant an email regarding her concerns and that R.S. "still often comes home hungry [and] with his lunch unopened." Docket No. 49 at 7.

Ms. Wilson's description of the support provided to R.S. during the lunch hour does not indicate that CMCA staff are acting in dereliction of the Court's order. Rather, it appears from Ms. Wilson's explanation that CMCA staff take care to facilitate R.S.'s needs during the lunch hour. Plaintiff does not dispute the accuracy of Ms. Wilson's description of the support R.S. receives or otherwise provide any basis to question Ms. Wilson's credibility. Thus, defendant has provided a reasonable and unrebutted explanation for the issues plaintiff raises. Plaintiff's argument is therefore insufficient to

establish that defendant is in violation of the stay-put order.

## III.  CONCLUSION

The inquiry into a student's current educational placement does not require courts to "micromanage minute aspects of a school district's curriculum choices regarding IDEA-eligible students." *Eley v. Dist. of Columbia*, --- F. Supp. 2d ----, 2014 WL 2507937, at *8 (D.D.C. June 4, 2014).  Plaintiff's motion largely seeks a level of judicial intervention in the day-to-day aspects of R.S.'s education that the IDEA does not contemplate.  For the foregoing reasons, it is

**ORDERED** that plaintiff's Motion for Clarification of Preliminary Injunction Order [Docket No. 39] is **GRANTED** in part and **DENIED** in part as indicated in this order.  It is further

**ORDERED** that plaintiff's Verified Motion for Order to Show Cause [Docket No. 46] is denied.

DATED August 20, 2015.

                                          BY THE COURT:

                                          s/Philip A. Brimmer
                                          PHILIP A. BRIMMER
                                          United States District Judge